Mr. Clerk, will you call the first case, please? 312-545 and re Former Marriage of Beatrice De La Torre, Myrna Smith, Accommodated by Robert Phillips Ward, James De La Torre, and all athletes by Jackson, Anaheim.  Good afternoon, Your Honor. My name is Robert Phillips Ward, and I'm here today on behalf of Myrna Smith. May it please the Court. This is a very difficult case involving our professional colleagues amongst the bench and the bar. But at the outset, I'm compelled to point out certain erroneous, misleading quotes, which unfortunately have been misrepresented and attributed to Myrna Smith. Which misquotes, I believe, are at the core of the issues of this case, and perhaps the reason why 137 Sanchez had been imposed against Myrna Smith. For example, on page 6 of Opposing Counsel's Brief, the lower half of the page is comprised of a quoted section from Judge Anderson's written memorandum of opinion in order of May 31, 2012, awarding Wolfenstech Limited attorneys fees in the amount of $6,890 against Myrna Smith pursuant to Supreme Court Rule 137. On the fourth and fifth lines of that quoted section of Judge Anderson's order, Judge Anderson states that Smith's motion to vacate on February 10, 2011, seeking to vacate the order of January 13, 2011, and Smith's own cross-motion for Sanchez, and I quote, characterized W.S. attorney Jacqueline Aldridge as a courthouse insider. End quote. While the Court was apparently attributing authorship of this very odious term, that is, courthouse insider, to Myrna Smith, the fundamental problem here is that Myrna Smith never said or wrote those words. Again, on page 8 of Opposing Counsel's Brief, line 3 of the last paragraph, there is another reference to Smith reportedly having characterized Jacqueline Aldridge as a, and I quote, courthouse insider. So, too, on page 23 of the Opposing Counsel's Brief, on line 5 of the first full paragraph, it is contended that Smith labeled Aldridge a, and I quote, Will County insider. But as I've already explained, Smith never said or wrote those words. What did Smith actually write? Well, in her motion to vacate on February 10, 2011, Smith stated in paragraph 7, lines 4 and 5 of saying that, and I quote, simply because Jacqueline Aldridge perceives herself an insider in Will County. How is it then that someone perceiving herself an insider or someone saying that subsequently escalated into whether or not Aldridge was actually a courthouse insider or a Will County insider, especially when the record is readily available for fact-checking? It is indeed disturbing when an author's words are paraphrased by another and then improperly placed between quotation marks and presented as the actual quote. It is a staple of English 101 that a quote is to be exactly that, the exact words, not the seemingly similar words of the author. As the foregoing illustrates, the misleading paraphrases have been misrepresented as quotes. Had Smith actually maintained that Jacqueline Aldridge or anyone else was a courthouse insider anywhere in the courts of our state, I would not be representing her today in this appeal. But as I stand before your honors today, I am absolutely confident of two unqualified truths. First, that there are no insiders anywhere in the courts of our state, and two, that Smith never wrote them. It is one thing for Smith to write that someone may have a perception that he or she is an insider, but it is an untenable, unjustifiable quantum leap to charge that Smith was thereby reporting any legitimacy to someone else's self-delusion, if it exists. Yet, the misquotes have done essentially and precisely that. As lawyers, we must and do know that words have power and may be misused or misquoted to powerful effect, as in this case. And while an important subject of words use in this case, to be sure, there are some very troubling words that have been employed. For example, in the proceeding before Judge Matthew Bertani on June 10, 2011, in the transcript of that hearing, the court, in addressing Smith directly, stated, I quote, I am a practicing Catholic, and that makes me a practicing Christian, Ms. Winters, but you, at least based on the evidence that I see, you appear to be a practicing paranoid Christian, and I don't know why, end of quote. At that same hearing, the court referenced a letter written by Smith to Jacqueline Aldridge and said, in my opinion, and I quote, what was written, and only my opinion, is something that wasn't Christian-like. That is neither here nor there, end of quote. I am obliged to say that in all my years of continuous practice in this state, I have never heard or read, nor did I ever think I would read or hear, coming down from the bench in any American court of law, words of that nature, respectfully, for a multitude of reasons, and irrespective of any ostensible beneficial purpose thought to be served by the court by such intemperate remarks. Such pejorative language and judicial conclusions involving Smith's religion and mental state have no place in our courts. What I also believe has been overlooked is that Smith's motion to vacate maintained that Jacqueline Aldridge had made a material misrepresentation to the court regarding the extent and parameters of the agreement to continue the hearing of January 13, 2011. Consequently, despite Judge Anderson romantically concluding that Smith had impugned the integrity of the court, that is, Judge Bertani, with reference to Aldridge perceiving herself to be an incitement, there was no allegation whatsoever, implicit or explicit, in Smith's motion to vacate that was in any way directed against the court. As practicing attorneys, we all know that particularly in situations where only one attorney is present, the court often must and does rely upon the representations of the attorney in attendance as to case status and stipulations of any. But by no fair reading of Smith's motion to vacate of February 10, 2011, is there the slightest allegation directed against the court, only that Jacqueline Aldridge herself had misrepresented to the court the scope of the agreement to continue the previously scheduled hearing on the response motion to modify child support. As made clear in Smith's motion to vacate, the proper procedure regarding objections to discovery is for the proponent of the discovery to file a motion to compel pursuant to the Supreme Court rules. Obviously, then, there was no agreement on the part of Smith to schedule any premature or inappropriate hearing on the party's competing objections to discovery. Supreme Court Rule 137 being penal in nature, it is designed to discourage and punish frivolous lawsuits, false pleadings, and delays intended to increase the cost of litigation. Given that the court grants Smith's motion to vacate the order of January 13, 2011, I submit that the motion must be presumed to have been a judge meritorious, not frivolous, and not false. For had it been otherwise, it would not have been properly granted by the court, but summarily denied. The other point I wish to stress about WERS has been held in the citing case Patton v. Lee, where misstatements are inconsequential to the primary issue involved or made by a party, and where there are no specified damages due to those inconsequential misstatements, the movement is not entitled to 137 damages. In the case before Your Honors, Smith's comment about Aldridge's self-perception of beating an insider in Will County was inconsequential to the primary issue or purpose of her motion to vacate the order of January 13, 2011, namely that based upon Jacqueline Aldridge's misrepresentations to the court, the order has entered, exceeded the party's limited agreement to continue the hearing of January 13, 2011. Moreover, no monetary damages were sustained by anyone due to the failure of Smith's successful motion to vacate on February 10, 2011. The motion having been granted, the party's underlying litigation could have and would have thereafter proceeded in an orderly fashion had not Jacqueline Aldridge interrupted the proceedings by pursuing at that time a real 137 motion for sanctions against Smith. The three days of hearings on the 137 motion effectively superseded the advancement of the client's respective interests for months and held the client's matters hostage while the hearings ensued. But for Jacqueline Aldridge's insistence on the hearings, no attorney's fees and the prosecution of the same would have accrued, and thus no damages. In reality, the fees sought by a Wilkins step were incurred as a direct result of the three days of Rule 137 hearings and not because Smith's motion had delayed the party's underlying case. No actual damages were sustained due to Smith's motion to vacate having been filed and granted. And therefore, we submit that the court having awarded Rule 137 sanctions and fees against Smith was an abuse of the court's discretion. It must also be noted that there is ample case law for the attorney litigation privilege which existed here. In the cited case of the Carl v. Funkhauser, the court ruled that the attorney litigation privilege is absolute and extends to what might be otherwise considered harassing or defamatory matter. Certainly, Smith's comments about perception did not rise to the egregious level that somehow you would somehow invalidate or void the absolute litigation privilege that she enjoys in this case. I have nothing further at this time, Your Honors. Any questions? I guess not. Thank you, Mr. Ward. You're welcome, Your Honor. And Ms. Aldrich? Yes, thank you. Good afternoon. May it please the Court? Your Honors, Mr. Ward. This appeal has been brought as a result of a petition for sanctions that was filed against Ms. Smith, counsel for the petitioner in the underlying proceeding. And I apologize. My name is Jacqueline Aldrich of Wolfenstech. I'm here on behalf of the respondent and appellee. Unfortunately, this appeal does not deal with underlying clients in the case of former marriage of Della Torre. We were in court on petitions. The proceedings before the trial court were regarding modification, visitation, and child support. Unfortunately, there became a complete breakdown of communication between Ms. Smith and myself. We're here because a petition for sanctions, unfortunately, had to be filed. And as an attorney, as an officer of the court, it was with great reluctance that myself, my firm, filed a petition for sanctions. The allegations that were made in the motion to vacate were severe allegations. They were interposed for the improper purpose of harassing myself, my clients, and causing a delay of the child support proceedings. Let me ask you, the petition to vacate that order, that ex parte order, was that apparently what you had represented to the trial court was beyond what your opposing counsel had agreed to have you represent to the trial court. Specifically, it's about a hearing on objections to a discovery. Ultimately, the trial court granted that motion to vacate, apparently finding that there was no agreement. So, in what respect was the motion to vacate in bad faith? Judge Bertani, who was presiding judge over the motion to vacate and the petition for sanctions, actually addressed that. The motion to vacate contained two counts. Count one was that there was no agreement to set a hearing on the objections to discovery. There was never a dispute by myself that there was no agreement with counsel to set those for hearing. The allegation in count two of the motion to vacate was that I entered an ex parte order, that I did this because I perceived myself to be a Will County insider, and the implication was that I was taking advantage of that insider status and taking advantage of the system to gain an unwarranted advantage against counsel. That's not what happened. The problem is that, as with the brief that was filed by counsel, by the appellant and the motions and the pleadings that even followed the motion to vacate, counsel talked about misquotes and mischaracterizations. That is a practice that Ms. Smith engaged in throughout the entire proceedings. The statement that I engaged in, Ms. Smith took the transcripts from the January 13th court date when I was there on the motion to continue. And, unfortunately, the quote from the transcript is that the only other thing is judged that I had not, and I probably did discuss with Ms. Smith, is there are pending objections to discovery. Ms. Smith took that statement out of context. If you read the entire transcripts, it's very clear that I had not discussed them. Will County does use the CourtSmart program. In many of the transcripts there are typos. I may have stumbled over my words when I was in court that morning. Even in the transcripts, when you read the entire transcripts, it's evident that I tell Judge Bertani, we're setting a hearing date on the underlying petition for child support and visitation. But we still have these pending objections to discovery. My motion to continue, that I was properly before the court on, with proper notice to Ms. Smith, did allege that there were two bases for the continuance. One was a change in circumstances and my client just being notified that he was going to be terminated from his employment. Which meant we needed to amend the petition or file a new petition. The other was that both sides had outstanding objections to discovery that had not been addressed. So Ms. Smith argues that she never alleges that I entered into ex parte communication. But in her brief, her own definition of ex parte was done or made at the instance and for the benefit of only one party and without notice to or argument by any person adversely interested. What Judge Bertani recognized was that one, setting the objections to discovery was beneficial to both parties. Well, but in the normal course of civil discovery, and of course the usual event is you serve discovery on your opponent, they serve them on you, and then somebody files answers with some objections. For instance, Supreme Court Rule 201 specifically, even back when I was practicing law, it required you to have what's called a 201K conference. And you'd get on the phone and say, come on everybody, can you answer this, can you answer that? And then you say no, and then you file a motion to compel answers. And you say, you've got to put a paragraph in that motion to compel according to 201K. We've tried to work it out, but we're not able to come to an agreement. Ergo, Judge, we need you to decide this matter. So usually there's a motion to compel filed before there's any hearing, and that motion to compel can only be filed after a 201K conference, correct? Correct, Your Honor. Had there been a 201K conference or a motion to compel filed at the date that hearing was scheduled? There had not been a motion to compel filed. There had been 201K correspondence between the attorneys. Unfortunately, and this is what brings me to the reasoning, part of the reasoning behind the need to file a petition for sanctions, was that the correspondence regarding the 201K and the discovery issues were malicious. They contained allegations against myself. They went, unfortunately, down the wrong path. They led to Ms. Smith filing an error DC complaint against myself, alleging racial discrimination, that I was an anti-Christian bigot, all of these allegations that upon receiving the error DC complaint, and although counsel argues that that is why the petition for sanctions was filed, it is not. Counsel argues that that is why Judge Bertani sanctioned her, and that's not the case. The point that was made in the petition for sanctions was that this count two of the motion to vacate went beyond bounds of zealous advocacy. There was no need for it. It was malicious. It was harassing. And specifically, you're talking about the sentence in there that says you perceived yourself to be a Wolf Alleyon sex offender. Correct. The quote is, and the purpose of Rule 137 is, one, when there are factual allegations that are made without, that are not well-grounded in fact or law, but also when they're interposed for an improper purpose. The paragraph in the motion to vacate, and this was count two, which is the count that Judge Bertani granted the sanctions for, not count one, was that counsel acknowledges that she should not have had to file this motion to vacate, but felt compelled to set the record straight. She felt she needed to tell the court and continue to harass myself over what she believed was religious discrimination. I think that quote in and of itself tells the court that this was brought for an improper purpose. Unfortunately, after the January 13, 2011 court order was entered, which addressed the objections to discovery, that same day I faxed a letter over to counsel, and at that point, after the ARDC complaint, felt that I could only communicate in writing to make sure that there weren't any further allegations of discrimination. I referenced in that letter that if there's any problem, if you're not available on that day for the hearing to the objections, please contact me and I'll reschedule it. I never received a phone call. I never received a letter. We could have addressed that issue much more expeditiously than waiting until two days before the hearing on the objections to file the motion to vacate. Three weeks had passed that I could have received a phone call or letter saying, hey, wait, I didn't agree to that. Well, as you said, reading the record, it struck me that probably phone calls between you and opposing counsel would not be a good idea. Correct. Correct. Again, that brings me to my point in why the petition for sanctions, the allegation to the motion to vacate is the Rule 137 sanctions. It was that allegation that was unsubstantiated that was interposed for the improper purpose. The petition for sanctions lays out the corroboration, which was the course of conduct that Ms. Smith had continued to engage in. Referencing my interpretation of the law as a sophomore, as your honors, I'm sure have read the briefs and the letters attached. Even in the reply brief, Smith continues to berate me and discuss my behaviors as sophomoric, as though I'm a young attorney who doesn't know what she's doing. She doesn't understand the rules of discovery. They went beyond what was necessary to conduct a 201K conference. Judge Bertani referenced Ms. Smith's Christian beliefs, but he didn't do that on his own initiative. Ms. Smith filed a cross-motion for sanctions against myself and my client. That was proceeded to hearing before Judge Bertani at the same time, directly after the motion to vacate. In her cross-motion for sanctions, in her reply, I believe, to my response to her cross-motion for sanctions, she then makes allegations of racial discrimination. These are serious allegations. When she testified at the hearing, she had no basis for that. She then continued in this course of conduct by filing a petition for substitution of Judge Bertani for costs. What specifically were the sanctions? What conduct specifically did the court find sanctioned? The court found Count 2 of her motion to vacate sanctionable. I believe Judge Bertani gave oral findings regarding her conduct during the proceedings that corroborated the allegation that the Count 2 was for an improper purpose and that it was put in there solely for harassment. He found that they went beyond the bounds of zealous advocacy, that they were done for the sole purpose of harassing. And Judge Bertani is the trier of facts, and we are here before your honors. This is an abuse of discretion standard. Judge Bertani did hold an evidentiary hearing. He was able to assess the credibility of the witnesses. Myself and Ms. Smith, unfortunately, were the witnesses in that hearing. Well, just correct me if I'm wrong, but specifically the comment that seemed to draw the ire of everybody was that you perceived yourself to be a Will County insider. Is there anything else about it? Is that it? Well, the entire allegation was that simply because Jacqueline Aldridge perceives herself as an insider in Will County and while the undersigned petitioner's counsel is not a regular in Will County, nonetheless Aldridge is not entitled to unilaterally transgress the boundaries of an agreed order by means of an ex parte self-serving misrepresentation to the detriment of the petitioner's counsel to blindside or obtain an unwarranted advantage against opposing counsel. The issue really was not the allegation that I was a Will County insider. It was that I was behaving in an unethical manner, that I was using that quote-unquote insider status to gain an unwarranted advantage in the proceedings, which was not true. Well, would it be unreasonable for a lawyer who has an agreement with another lawyer about, hey, I can't make it to court, you go in and I agree to A and B, and then they get an order that says A, B, and C, to be a little irate and says, I didn't agree to this and therefore to the extent it goes beyond our agreement, that was an ex parte order. Is that an unreasonable response? Specifically, there was a lot of argument about, judge, they're casting aspersions on the court. And what about that, to cast aspersions on the court? The point was that by alleging that I entered into an ex parte order, an ex parte order would have been an order entered by counsel's own definition, that I was before the court without notice to counsel, that Judge Bertani entered the order knowing that there was no notice to counsel without her being available. What had happened was, my motion to continue, Ms. Smith knew it was not an ex parte order because Ms. Smith received notice of the court date, chose not to appear, and notified me that she could not appear and that she had no objection to the continuance. She could have appeared and she could have addressed the other issues in my motion to continue, which were the objections to discovery. I was properly before the court, addressing the court on continuing the hearing on the child support, and the underlying objections to discovery, which was another basis for the motion to continue. Counsel, you have two minutes. Thank you. Ms. Smith's appellate brief continues to contain misstatements of the facts of the law. She maintains that Judge Bertani sanctioned her for filing the error decency complaint, that there was no subject matter jurisdiction for him to do that. Again, that's not what happened. He even addresses in his oral findings that he could not have done that. He never read the error decency complaint. The only reason that the issue of the error decency complaint was before the court was to establish our burden, my burden, that Smith was engaging in a course of conduct of harassment. That to go to the level of filing an error decency complaint against another attorney, for most attorneys, should be a big decision. What the purpose behind it was, the allegations of anti-Christian sentiment, calling me a bigot in pleadings, again, are severe allegations. This is not the path our legal profession should go down. And certainly, should I have not set the objections to discovery for hearing, there was an easier way to address that. A letter would have sufficed, and we could have proceeded without the name-calling, without the allegations against myself, and the allegations that continued in the hearing for three days against myself. They turned into allegations against Judge Bertani, against Judge Anderson, in the motion for substitution for cause, that both judges are prejudiced against her because they ruled against her. It's not okay as a legal professional to make those allegations that are unsubstantiated. Well, if a lawyer feels that a judge is biased against them, the rules allow them to file a motion. Correct. That is well-grounded in fact and for a proper purpose. Thank you. Thank you, Your Honor. Thank you, Ms. Hoffman. Mr. Evans. And Mr. Ward, any rebuttal? Mr. Smith, Your Honor, you detailed the procedure for motion to compel. In my review of this transcript, what happened was, Judge Bertani, who was new to the bench, I believe, while they're not practiced in Will County, and new to the Family Law and Domestic Relations Division there, indicated somewhere in the transcript that he didn't know you had to file the motion to compel first before setting some sort of hearing on objections to discovery. And that's what happened. And that's why it possibly appeared somewhat irregular to Attorney Smith when she saw the order containing that provision regarding scheduling a hearing on competing objections to discovery. I think that's what happened. Nothing further. Thank you, Mr. Ward. Thank you both for your arguments today. We will take this matter under advisement and get back to you with a written disposition shortly.